UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-cv-20367 -Moore/Torres

CHRISTOPHER HANSEN,
individually,

    Plaintiff,

v.

ISLAS CANARIAS RESTAURANT INC.,
A Florida for profit corporation,
and MIAMI GALAXY CORP.,
A Florida for profit corporation,

    Defendants.
_____/

## CONSENT DECREE

**THIS CONSENT DECREE** (the "Consent Decree" or "Agreement") is entered into by and among CHRISTOPHER HANSEN ("Plaintiff"), on the one hand, and ISLAS CANARIAS RESTAURANT INC., and MIAMI GALAXY CORP., ("Defendants"), on the other hand, hereinafter collectively the "Parties."

**IT IS HEREBY** stipulated and agreed by and among the Parties as follows:

**WHEREAS,** on or about January 30, 2014, Plaintiff filed the above-captioned action against Defendants for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("Title III" of the "ADA"), regarding the real property and improvements thereon located at 285 N. W. 27th Avenue, Miami, FL 33125, (the "Property"), pursuant to which Plaintiff sought a permanent injunction and attorneys' and expert's fees, expenses and costs;

1

**WHEREAS,** Defendants do not admit, and expressly deny, any violation(s) of any federal, state or local statute (including, but not limited to, the ADA), and state or municipal fire safety or building code, or any other wrongdoing or liability whatsoever;

**WHEREAS,** Defendants represent that they intend to improve current access to the Property as set forth herein for persons with disabilities in compliance with the 2010 ADA Standards for Accessible Design, consisting of the 2004 ADA/ABA Accessibility Guidelines for Buildings and Facilities (36 CFR Part 1191, Appendices B and C) along with 28 CFR Part 36, Subpart D, the New Construction and Alterations portion of Title III (all hereinafter referred to as the "2010 Standards").

**WHEREAS,** Plaintiff and Defendants have agreed to a settlement of this action;

**WHEREAS,** the Parties desire to avoid further expense, time, effort and uncertainty in regard to this action;

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree to the following terms and conditions as full and complete settlement of this action.

## ADA ACCESSIBILITY AND BARRIER REMOVAL

1. The above recitals constitute part of this Consent Decree. Plaintiff alleges in this action that certain physical barriers to access exist at the Property which restrict and/or limit Plaintiff's access to the Property. In response to and in settlement of the allegations contained in the Complaint and all other allegations brought or which could have been brought in this action

with respect to this Property, Defendants agree to perform the following barrier removal, alterations, and/or modifications (the "Modifications") as follows:[1]

a). The Defendants shall provide accessible parking for the restaurant by implementing one of the following choices: Choice I - i) Defendants shall: a) reconfigure the parking space currently in front of Alvarado Locksmith, by making it a 12 foot wide accessible parking space; ii) provide a second accessible 12 foot wide parking space in front of Bellisumma; iii) with a shared 5 foot wide access aisle between both accessible parking spaces; iv) and signage at both accessible spaces that includes the International Symbol of Accessibility and is mounted a minimum of 60 inches above the ground surface measured to the bottom of the sign; and v) move back the wheel stop that is located in front of Alvarado Locksmith to ensure an accessible path of travel from the accessible parking to the restaurant entrance, in compliance with Section §502, §703.2.1 and §403.5.1 of the 2010 Standards; or Choice II – i) Defendants shall leave the designated accessible parking as it is; ii) move back the wheel stop that is located in front of Alvarado Locksmith to ensure an accessible path of travel from the accessible parking to the restaurant entrance; and iii) provide a curb ramp at the top of the existing access aisle for the purpose of accessing the restaurant entrance in compliance with §403.5.1 and Section 406 of the 2010 Standards.

b). Defendants shall modify the Men's restroom so that it is a unisex accessible restroom that can be used by both women and men who must use wheelchairs.

---

[1] Words and phrases used in this Consent Decree that have definitions provided in 28 C.F.R. Part 36, Appendix A (hereinafter referred to as the "2010 Standards"), or 28 C.F.R. §36.104 shall be construed as defined in the 2010 Standards or 28 C.F.R. §36.104, as applicable.

3

c) Defendants shall provide compliant signage at the unisex accessible restroom door to include Braille and tactile characters and the female and male pictograms and mount the sign(s) so that the baselines of the tactile characters are between 48 and 60 inches AFF in compliance with §703 and Figure 703.3.1 of the 2010 Standards.

d). Defendants shall replace the entrance door for the unisex accessible restroom with a door that has a minimum clear width of 32 inches in compliance with §404.2.3 of the 2010 Standards.

e). The Defendants shall ensure that the entrance door has lever hardware on the exterior, and a privacy lock that can be operated with a closed fist, and if the door handle has an integral locking mechanism, ensure that it is of the push-button type, not the pinch-and-twist type in compliance with §§404.2.7 and 309.4 of the 2010 Standards.

f). Defendants shall remove the urinal and its adjacent partition to create the unisex accessible restroom and provide more clear floor maneuvering space inside the restroom in compliance with §403.5.1 of the 2010 Standards.

g) Defendants shall remove the partition at the water closet for the unisex accessible restroom, to provide more clear floor space that will allow for a lateral transfer onto the water closet in compliance with §604.3.1 and Figure 604.3.1 of the 2010 Standards.

h). Defendants shall ensure that the accessible water closet in the unisex accessible restroom has the flush valve on the wide side of the toilet area in compliance with §604.6 of the 2010 Standards.

i). Defendants shall provide a 42 inch side grab bar at each accessible water closet, mounted with the top surface between 33-36 inches AFF, with the end of the grab bar no more than 12 inches from the rear wall in compliance with §§604.8.1.5, 609.4, 604.5 and Figure 604.5.1 of the 2010 Standards.

j).     Defendants shall provide a 36 inch rear grab bar at each accessible water closet, with the top surface between 33-36 inches AFF, with the short end of the grab bar projecting at least 12 inches past the centerline of the water closet in compliance with §§604.8.1.5, 609.4, 604.5 and Figure 604.5.2 of the 2010 Standards.

k).     Defendants shall relocate the toilet paper dispenser and shall either: a) relocate the toilet paper dispenser above the side-wall grab bar so that there is a minimum of 12 inches between the two, and ensure that the outlet of the dispenser is 48 inches AFF and that the centerline of the dispenser is between 7 and 9 inches from the front of the water closet in compliance with 604.7, Figure 604.7 and 609 of the 2010 Standards; or relocate the toilet paper dispenser below the side grab bar so that there is a minimum of 1 ½ inches between the two. Ensure that the outlet of the dispenser is no lower than 15 inches AFF, and that the centerline of the dispenser is between 7 and 9 inches from the front of the water closet, in compliance with §§604.7, Figure 604.7 and Figure 604.7 and 609.3 of the 2010 Standards.

l)     Defendants shall modify or replace the lavatory in the unisex accessible restroom to provide an accessible lavatory in compliance with §606, Figure 606, §305.3, §305.5, §306.2 and §306.3 of the 2010 Standards.

m)     Defendants shall ensure that the hardware on the modified or new lavatory is hardware that does not require tight grasping or twisting of the wrist to operate in compliance with §309.4 of the 2010 Standards.

n)     Defendants shall, if necessary, insulate the pipes for the modified or new lavatory in compliance with §606.5 of the 2010 Standards.

o).     Defendants shall lower the hand dryer so that it is no higher than 48 inches above the finished floor to its highest operable part 308.3.2 and 309.3 of the 2010 Standards.

p). The Defendants shall lower the mirror and mount it so that the lowest edge of the reflective surface is no higher than 40 inches AFF, or alternatively may install a full length mirror in compliance with §603.3 of the 2010 Standards.

q). The Defendants shall remove the table that has signage on it designating it as accessible and shall replace it with the two (2) tables that were previously located in this area in compliance with §226.1 of the 2010 Standards.

r). The Defendants shall replace the exterior door hardware on the exterior door on the second floor of the shopping plaza that leads to the public accessible restroom and provide door hardware that is be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist in compliance with §309.4 of the 2010 Standards.

2. Defendants shall complete the Modifications set forth in Paragraph 1 within one (1) year of the full execution of this Consent Decree.

3. (a) Defendants shall complete the Modifications set forth in Paragraph 1 within the timeframe set forth in Paragraph 2. However, if the Modifications are not timely completed due to acts of God, third parties, or reasons beyond the control of Defendants (including but not limited to, delay in obtaining or inability to obtain building permits, delay in obtaining or inability to obtain the consent of any other party or person, or entity, whose consent is required pursuant to any agreement affecting the Property, failure of county inspectors to make inspections, shortages in construction materials, contractor defaults, work stoppages due to labor related disputes or weather conditions, etc.) then Defendants shall be allowed additional time in which to complete the Modifications and shall not be deemed to be in violation of the compliance date contained herein as long as Defendants provide written notice to Plaintiff's

counsel of the delay, the reasons for the delay, and the anticipated date of completion, and make a good-faith effort to effect implementation as soon as reasonably practicable thereafter.

  (b) In the event that all or part of a public accommodation on the Property where Modifications are to be performed are closed prior to any applicable completion date(s) and then reopened before the applicable completion date(s), then Defendants will have to make or complete any of the Modifications that would have been applicable to the part of the Property that was closed by the applicable completion date(s). In the event that all or part of a public accommodation on the Property where Modifications are to be performed are closed prior to any applicable completion date(s) and are not reopened, then Defendants will not be required to make or complete any of the Modifications that would have been applicable to the part of the Property that is closed, or all of the Property in the event that the entire Property is no longer a public accommodation. If all or part of a public accommodation on the Property where Modifications are to be performed are closed prior to any applicable completion date(s) and then reopened after the applicable completion date(s), then Defendants will complete the Modifications by the time the applicable portion of the Property reopens, so long as the applicable portion of the Property is substantially the same when it reopens as when it closed.

### RIGHT OF INSPECTION FOR COMPLETION OF MODIFICATIONS

  4. Upon the completion of the Modifications set forth in Paragraph 1, Defendants shall provide written notice by certified or registered mail, by facsimile, and/or by e-mail to Plaintiff's counsel of such completion and shall afford Plaintiff and Plaintiff's representatives reasonable access to the Property to verify completion of the Modifications. Nothing herein shall be construed to restrict or limit Plaintiff and/or his representatives from otherwise visiting

or accessing the Property. Defendant's failure to provide notice to the Plaintiff as required in this Paragraph 4 shall not represent a breach of this Consent Decree, but neither shall it preclude Plaintiff and/or Plaintiff's representatives from verifying the completion of the work required by this Consent Decree.

## ENFORCEMENT PROVISIONS

5. If Defendants provides notice of completion as set forth in Paragraph 5 above, then Plaintiff shall have forty-five (45) days from the date of such notice to verify completion of the Modifications. If upon such re-inspection Plaintiff contends that Defendants have failed to complete any Modifications, then, within thirty (30) days after the inspection, Plaintiff shall provide to Defendants, via facsimile or e-mail, a detailed written report of the asserted issues of non-compliance ("Plaintiff's Report"). Defendants will have thirty (30) days after receipt of Plaintiff's Report to cure any of the deficiencies claimed in the Report. The Parties will then engage in good-faith discussions regarding whether Plaintiff's claim(s) set forth in Plaintiff's Report have been cured, and, if appropriate, the Parties will settle any remaining dispute by seeking appropriate legal relief.

6. The Parties agree that this Consent Decree shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and/or assigns, including any successor owners, operators, lessors, or lessees of the Property.

7. In any action to enforce this Consent Decree (which shall include the parties "seeking appropriate legal relief" as set forth in Paragraph 5 above), the prevailing party shall be entitled to recover its attorneys' fees, expert fees, litigation expenses and costs.

8. The Parties acknowledge and agree that nothing contained herein shall prevent Defendants from assigning their rights and obligations under this Consent Decree to a successor

owner or operator of the Property. Should Defendant assign its rights and obligations under this Consent Decree to a successor owner or operator of the Property, the successor owner or operator assumes such rights and obligations in writing, and Plaintiff is provided notice of the assignment, then Plaintiff agrees that Defendants shall be released from any and all claims or causes of action relating to obligations set forth in this Consent Decree, including, but not limited to, any action taken to enforce the terms of this Consent Decree. If Assignment occurs, then Plaintiff agrees not to file or pursue legal action against any successor in interest to the owner or operator of the Property for violations of the ADA or related or similar disability access laws in the future with respect to the existing Property. Further, if Assignment occurs, and if the Modifications are not completed pursuant to the terms of this Consent Decree, then Plaintiff's sole remedy shall be against the successor to enforce the terms of this Consent Decree.

## PLAINTIFF'S ATTORNEY'S FEES, EXPENSES AND COSTS

9.      Defendants shall pay or cause to be paid an amount representing payment for Plaintiff's attorney's fees, expert witness fees (if any), costs and expenses incurred in this action (the "Settlement Amount"). The Parties agree that the amount of the payment has been separately memorialized in writing and that amount is hereby incorporated into this Consent Decree by reference. Payment of the Settlement Amount shall represent full and complete payment for all of Plaintiff's and his attorney's and expert's claims for monetary relief, including fees, expenses and costs, which were raised or could have been raised in this action. Payment shall be made payable to "Stephan M. Nitz, P.A." and shall be sent to Plaintiff's counsel within ten (10) days of entry of a final order approving or entering this Consent Decree and dismissing this action with prejudice. Defendants shall have no role, responsibility, liability or interest regarding how the Settlement Amount is to be divided among Plaintiff's attorneys, Plaintiff's

expert witness, or any other persons with claims to the Settlement Amount. Except as set forth herein, each party to this action shall bear its own fees, expenses and costs related to this action.

### NON-DISPARAGEMENT

10. The Parties agree that they will not make any disparaging, denigrating, demeaning or untrue statements about the other party or any person associated with the other party, including any officer, director, member, consultant, expert, or legal representative of the other party with respect to any of the issues raised, or which could have been raised in the above-captioned action.

### NON-DISCRIMINATION/ NON-RETALIATION

11. Defendants acknowledge that, pursuant to 28 C.F.R. § 36.206, it, its agents, and employees are under a duty not to discriminate against any individual because that individual has opposed any act or practice made unlawful by the ADA, or because any individual has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing regarding this matter or under the ADA, and not to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of, his or her having exercised or enjoyed, or on account of, his or her aid or encouragement of any other individual in the exercise or enjoyment of, any right granted or protected by the ADA.

### RELEASE OF CLAIMS

12. In exchange for the mutual covenants and the good and valuable consideration set forth herein, Plaintiff, along with all of Plaintiff's agents, successors, assigns, heirs, officers, directors, shareholders, employees, members, affiliated entities, along with anyone claiming by or through them, jointly and severally, (collectively the "Releasing Parties") hereby release, acquit, satisfy,

and discharge Defendants, along with its parent companies, subsidiaries, divisions, affiliates, related companies and persons, predecessors, successors, heirs, executors, administrators, assigns, shareholders, members, directors, officers, employees, agents, attorneys, and lessors and/or lessees at the Property (collectively the "Released Parties"), jointly and severally, from any and all claims, causes, causes of action, damages, demands, liabilities, debts, judgments, expenses, equities and any and all other claims or suits of any kind, whether known or unknown, regarding the Property, from the beginning of the world to the date of this Consent Decree, including, without limitation, any and all claims pursuant to Title III of the ADA regarding the Property (and/or any other federal, state or local law governing physical access features for persons with disabilities at public accommodations, whether before any federal, state or local agency, court of law, or before any other forum) such as the claims that were asserted, or could have been asserted, in the above-captioned action, including all claims by the Releasing Parties for attorneys' fees and costs, expert fees and costs, or any other fee or cost, except as otherwise set forth herein; *provided that*, this release shall in no way limit Plaintiff's or the Court's ability to monitor and enforce Defendants' compliance with the terms of this Consent Decree.

13.     Within five (5) days of full execution of this Consent Decree, the Parties shall file a joint motion to approve and enter this Consent Decree and for dismissal with prejudice of this action, along with a copy of this Consent Decree. Dismissal of this action with prejudice shall be a condition precedent for Defendants' payment obligation set forth in Paragraph 10 above. The joint motion shall request that the Court retain jurisdiction to enforce this Consent Decree.

## INTEGRATION/SEVERABILITY

14. This Consent Decree constitutes the entire understanding and agreement of the Parties and supersedes all prior or contemporaneous negotiations or agreements (written or oral) and cannot be modified, amended or revoked except by the express written consent of all Parties.

15. Nothing in this Consent Decree shall be construed to amend or modify the provisions of any lease agreement for the Property between Defendants and any lessee.

16. If any provision of this Consent Decree or any part of any provision of this Consent Decree is found to be invalid or unenforceable by a court of competent jurisdiction, such shall not affect the validity of any other provision(s) or part(s) of this Consent Decree.

## CONSTRUCTION/ AMBIGUITIES

17. The Parties acknowledge that each Party has reviewed and participated in the drafting of this Consent Decree and that the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in its interpretation.

## WAIVER

18. The failure of any party to assert any of its rights hereunder shall not constitute a waiver of such rights.

## GOVERNING LAW

19. This Consent Decree shall be governed by and construed in accordance with the laws of the State of Florida and, where applicable, the ADA without regard to principles of conflicts of law. Any claim regarding this Consent Decree, or alleging a material breach of this Consent Decree, shall be filed in the above-styled Court, if it has jurisdiction, or in the Circuit Court in and for Broward County, Florida.

## EXECUTION

20. The Parties have read and understood this Consent Decree, have had the opportunity to discuss same with legal counsel, and have voluntarily agreed to sign the Consent Decree and agree to be bound thereby.

21. Each person executing this Consent Decree on each Party's behalf has been duly authorized to sign on behalf of the respective party and to bind each to the terms of the Consent Decree.

22. The Parties agree that this Consent Decree may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument. The Parties agree and acknowledge that a photocopy, facsimile copy or scanned copy of an executed signature may be used in place of an original executed signature for any purpose.

23. As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that he is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this action under Title III of the ADA, which are released under this Agreement.

## NOTICE

24. Any notice, correspondence, payment or other communication contemplated by or connected with this Consent Decree shall be directed as follows:

    (a)    If to Defendants:    Rene Gonzalez-LLorens
Schutts & Bowen LLP
1500 Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 347-7337
Facsimile: (305) 347-7837
E-mail: rgl@shutts.com

13

(b)     If to Plaintiff:        Stephan M. Nitz
                                Stephan M. Nitz, P.A.
                                4302 Hollywood Blvd., #1010
                                Hollywood, Florida 33021
                                Telephone (954) 364-7734
                                Facsimile (954) 374-7051
                                Email: snitzadalaw@gmail.com

**[This space intentionally left blank.]**

25  The Parties expressly represent and warrant that they (a) have carefully read this entire Consent Decree, consisting of 25 numbered paragraphs and 15 pages; (b) fully understand the terms, conditions, and significance of this Consent Decree; (c) have had ample time to consider and negotiate this Consent Decree; (d) have had a full opportunity to review this Consent Decree with their respective attorneys and have done so; and (e) have executed this Consent Decree voluntarily, knowingly, and with the advice of their respective attorneys.

**CHRISTOPHER HANSEN,**
Plaintiff

By: _C Hansen_
CHRISTOPHER HANSEN

Date: 4-10-14

**ISLAS CANARIAS RESTAURANT INC.,**
Defendant

By: _[signature]_
Signature

_JESUS L. GARCIA_  SECRETARY AND TREASURER
Print name and title

Date: 4-10-2014

**MIAMI GALAXY CORP.**
Defendant

By: _[signature]_
Signature

_Nancy Q. Andrade_
Print name and title

Date: 4/14/14

15